**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
BILLY RAY PARKER,            )
                            )
            Plaintiff,       )
                            )
        v.                   )        1:13CV488
                            )
RICK BURRIS, et al.,         )
                            )
            Defendants.      )
```

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned Magistrate Judge for a recommended ruling on Defendants Sarah Mills, LPN ("Nurse Mills") and Southern Health Partners, Inc.'s ("SHP") Motion to Dismiss for Failure to State a Claim (Docket Entry 12). For the reasons below, the Court should grant the instant Motion in part in that the Court should dismiss all claims against SHP and the negligence claim against Nurse Mills.

### BACKGROUND

This case began when Plaintiff filed a Complaint alleging deprivations of his constitutional rights under 42 U.S.C. § 1983 and negligence in connection with injuries sustained during Plaintiff's incarceration at the Stanly County Detention Center. (Docket Entry 1 at 8-11.) Plaintiff's Complaint names six Defendants: four law enforcement and corrections officers, as well as Nurse Mills and her employer SHP, which provides health services

to inmates under a contract with Stanly County. (Id. at 2-3.) The Complaint asserts that on November 10, 2011,

> [u]pon [P]laintiff's admission to the [Stanly County] Detention Center, [Nurse] Mills noted [P]laintiff's [Reflexive Sympathetic Dystrophy ("RSD")], but she failed to note and recognize [P]laintiff's condition as chronic and painful so as to require control through reasonable pain medication . . . . [and] thereafter caused [P]laintiff's physician-prescribed narcotic pain and other medication to be discontinued, and to be replaced by non-narcotic medication.

(Id. at 4.) According to the Complaint, "[a]s a result . . . [P]laintiff was rendered physically weak and unstable, and suffered from withdrawal from his previous medication . . . ." (Id.) The Complaint further alleges that, on November 19, 2011, because

> [D]efendants failed to . . . escort [] [P]laintiff to the non-handicapped shower, and they failed to allow him to use the handicapped shower facility . . . . [when he] attempt[ed] to take a shower in his unsteady and weakened condition, . . . [P]laintiff collapsed and fell on the wet surface area, and suffered severe injuries to his neck and back . . . .

(Id. at 5-6.) Plaintiff allegedly then received medical treatment at a different location including "surgery to relieve pressure on his spinal cord." (Id. at 6.)

Upon Plaintiff's return to the Stanly County Detention Center on February 13, 2012, he allegedly signed one form consenting to medical treatment, but "refused to sign a different form which contained illegible language, and which appeared to possibly release [] [D]efendants from liability for their previous actions with regard to their custody of [] Plaintiff." (Id. at 6-7.)

Plaintiff allegedly suffered another injury at the Stanly County Detention Center on February 14, 2012, "when he collapsed and fell," for which he again received outside medical treatment. (<u>Id.</u> at 7.) The Complaint alleges that Nurse Mills reviewed Plaintiff's medical records resulting from this treatment. (<u>Id.</u>) Subsequently, according to the Complaint, "[d]espite having reviewed his medical records provided, [] [D]efendants insisted that [] [P]laintiff sign an illegible form which they represented would grant permission to the Stanly County Detention Center staff to view his outside medical records . . . ." (<u>Id.</u>) Plaintiff's Complaint further states that, when he refused to sign the illegible form, Defendants continued to deny him his medication for the remainder of his confinement. (<u>Id.</u>) On February 16, 2012, Plaintiff, "in his weakened condition and wracked with untreated pain from his prior surgeries, injuries and medical condition," allegedly suffered a third fall and sustained further injuries. (<u>Id.</u> at 8.)

DISCUSSION

Nurse Mills and SHP filed the instant Motion pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that "Plaintiff's cause of action for negligence against both Defendants is in fact a 'medical malpractice' action" requiring expert certification under North Carolina Rule of Civil Procedure 9(j). (Docket Entry 12 at 1.) Defendants assert that both the negligence

-3-

and § 1983 claims should be dismissed because Plaintiff did not include such certification. (Docket Entry 13 at 7.)[1] Further, Defendants contend that Plaintiff's § 1983 claim against SHP fails as a matter of law because it "improperly attempts to state a claim against [SHP] through vicarious liability under the doctrine of *respondeat superior*." (Id.) Plaintiff responded in opposition, disputing that he alleges a medical malpractice claim (Docket Entry 17 at 2-7) and asserting the validity of the § 1983 claim against SHP because "it appears that there was a policy of SHP and the staff of the [Stanly County] Detention Center to require inmates to sign [an] illegible and vague form before any treatment was authorized" (id. at 8). Defendants replied. (Docket Entry 18.)

### Plaintiff's Negligence Claims

North Carolina Rule of Civil Procedure 9(j) "serves as a gatekeeper, enacted by the legislature, to prevent frivolous malpractice claims by requiring expert review *before* filing of the action." Moore v. Proper, 366 N.C. 25, 31, 726 S.E.2d 812, 817

---

[1] Defendant's instant Motion asserts that, based on the text of North Carolina Rule of Civil Procedure 9(j), the Court should dismiss "Plaintiff's entire Complaint, not merely the causes of action premised upon the alleged medical malpractice." (Docket Entry 13 at 7.) However, Defendant provides no cases to support this assertion (see id.) and the federal district courts in North Carolina have not recognized an obligation to dismiss related federal claims pursuant to North Carolina Rule of Civil Procedure 9(j). See, e.g. Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 641, 649-51 (M.D.N.C. 2004) (permitting federal civil rights claim to survive dismissal of medical malpractice claim under North Carolina Rule of Civil Procedure 9(j)).

-4-

(2012). Medical malpractice "complaints 'receive strict consideration by the trial judge,' and '[f]ailure to include the certification necessarily leads to dismissal.'" <u>Id.</u> (quoting <u>Thigpen v. Ngo</u>, 355 N.C. 198, 202, 558 S.E.2d 162, 165 (2002)). The Fourth Circuit recently recognized that Rule 9(j) certification constitutes a substantive requirement of North Carolina law applicable in federal court. <u>See</u> <u>Littlepaige v. United States</u>, No. 12-1367, 2013 WL 2501744, at *3 (4th Cir. June 12, 2013) (unpublished); <u>see also</u> <u>Graves v. Andrews</u>, No. 1:12CV154, 2013 WL 1010473, at *8 (M.D.N.C. Mar. 14, 2013) (unpublished) (Beaty, J.) ("'Failure to comply with Rule 9(j) is ground for dismissal of a state law medical malpractice claim filed in federal court.'" (quoting <u>Davis v. Jones</u>, No. 5:12CV143RJC, 2012 WL 4959497, at *4 (W.D.N.C. Oct. 16, 2012) (unpublished))); <u>Boula v. United States</u>, No. 1:11CV366, 2013 WL 1343547, at *2 (M.D.N.C. Apr. 2, 2013) (unpublished) (Webster, M.J.) (citing numerous decisions from federal district courts in North Carolina treating North Carolina Rule of Civil Procedure 9(j) as a substantive requirement of North Carolina law).

"In determining whether or not Rule 9(j) certification is required, the North Carolina Supreme Court has held that 'pleadings have a binding effect as to the underlying theory of plaintiff's negligence claim.'" <u>Sturgill v. Ashe Mem'l Hosp., Inc.</u>, 186 N.C. App. 624, 628, 652 S.E.2d 302, 305 (2007) (quoting <u>Anderson v.</u>

-5-

Assimos, 356 N.C. 415, 417, 572 S.E.2d 101, 102 (2002)). North Carolina law defines a medical malpractice action as "[a] civil action for damages for personal injury or death arising out of the furnishing or failure to furnish professional services in the performance of medical, dental, or other health care by a health care provider." N.C. Gen. Stat. § 90-21.11(2)(a). Professional services "means an act or service . . . involving specialized knowledge, labor, or skill." Horsley v. Halifax Reg'l Med. Ctr., Inc., N.C. App. , , 725 S.E.2d 420, 421 (2012) (quoting Lewis v. Setty, 130 N.C. App. 606, 608, 503 S.E.2d 673, 674 (1998)).

In the instant case, Plaintiff's allegations concern Nurse Mills's - and vicariously, Defendant SHP's - specialized knowledge as a medical professional. The Complaint asserts that Nurse Mills noted Plaintiff's RSD but nonetheless discontinued his narcotic pain medication and replaced it with non-narcotic medication. (Docket Entry 1 at 4.) The decision to discontinue a prescription medication - in connection with a rare syndrome - requires specialized knowledge, as an individual lacking the proper certification cannot prescribe medicine. See, e.g., Stevenson v. North Carolina Dept. of Corr., 210 N.C. App. 473, 476-77, 714 S.E. 2d 435, 437 (2011) (holding that claim against physician's assistant who allegedly failed to correctly diagnose prisoner's

skin condition and treat with prescription cream required expert certification).

Further, according to the Complaint, "[a]s a result of the discontinuance of [P]laintiff's physician-prescribed narcotic medication . . . [P]laintiff was rendered physically weak and unstable, and suffered from withdrawal . . . ." (Docket Entry 1 at 4.) Plaintiff's Complaint also alleges that this "unsteady and weakened condition" resulted in him falling and injuring himself on three separate occasions. (Id. at 6-8.) Thus, the Complaint alleges a direct causal link between Nurse Mills's medical decision to stop the narcotic pain medication and Plaintiff's injuries, supporting the conclusion that Plaintiff's negligence claim, in fact, seeks recovery for medical malpractice.

Plaintiff contends that his claim constitutes one for ordinary negligence, because Nurse Mills "had knowledge of [P]laintiff's vulnerability, and she had a common law duty to . . . see that precautions were taken to prevent further injury to the [P]laintiff." (Docket Entry 17 at 3.) However, the allegation that Nurse Mills had knowledge of Plaintiff's vulnerability depends on an analysis of her utilization of specialized knowledge in the provision of medical care to him. (See Docket Entry 1 at 4-5, 7.) For example, in a recent case considered by the Fourth Circuit, while a hospital monitored a patient on a "falls precaution," the patient suffered two falls in two days. Littlepaige, 2013 WL

-7-

2501744, at *1. The Fourth Circuit ruled that the complaint sounded in medical malpractice rather than ordinary negligence - and thus North Carolina Rule of Civil Procedure 9(j) applied - because "[t]he complaint describe[d] the falls precaution as a 'special duty' that can only arise as a consequence of the provision of professional medical services . . . . [and] allege[d] harm as a consequence of the 'failure to diagnose' and 'failure to treat' [the patient]." Id. at *4. Such circumstances mirror the allegations in the instant case and render distinguishable the cases cited in Plaintiff's Brief (Docket Entry 17 at 4-6) which do not involve health care providers' specialized knowledge or allegations concerning diagnosis and treatment. See, e.g., Barrett v. SSC Charlotte Operating Co., LLC, No. COA12-1271, 2013 WL 3422023, *1 (N.C. Ct. App. July 2, 2013) (unpublished) (alleging rehabilitation facility employees dropped patient while moving him from bed to shower chair); Allen v. County of Granville, 203 N.C. App. 365, 365-66, 691 S.E.2d 124, 125 (2010) (alleging medical center allowed patient to leave unsupervised despite mother's request to contrary); Taylor v. Vencor, Inc., 136 N.C. App. 528, 530, 525 S.E.2d 201, 203 (2000) (alleging nursing home failed to supervise patient while smoking cigarettes).

In sum, Plaintiff's negligence claims against Nurse Mills and SHP constitute medical malpractice claims, which the Court should dismiss for failure to obtain expert certification pursuant to

North Carolina Rule of Civil Procedure 9(j). As a final matter, in the event the Court grants Defendants' instant Motion, Plaintiff has requested a dismissal without prejudice. (Docket Entry 17 at 7.) "When acting pursuant to Rule 9(j), trial judges, with their unique perspective, have the discretion to dismiss without prejudice if they see fit." <u>Thigpen</u>, 355 N.C. at 202, 558 S.E.2d at 165. For instance, the North Carolina Supreme Court upheld a trial court's dismissal with prejudice because that court had granted the plaintiff her requested 120-day extension to comply with North Carolina Rule of Civil Procedure 9(j) and she still failed to include expert certification in her complaint. <u>Id.</u> at 200-01, 204, 558 S.E.2d at 164, 166. In other cases, without any such aggravating circumstance, courts have dismissed without prejudice. <u>See, e.g.</u>, <u>Wilkes v. Lee Cnty. Nursing & Rehab. Ctr., LLC</u>, No. 1:09CV505, 2010 WL 703111, at *5 (M.D.N.C. Feb. 24, 2010) (unpublished) (dismissing without prejudice pursuant to North Carolina Rule of Civil Procedure 9(j) to allow plaintiff to refile). In the instant case, Defendants have not articulated any reason to effect the required dismissal with prejudice and thus the Court should decline to do so.

### Plaintiff's Section 1983 Claims

The Fourth Circuit has conditioned liability for private corporations under 42 U.S.C. § 1983 on the same requirements established for municipal corporations. <u>Rodriquez v. Smithfield</u>

-9-

Packing Co, Inc., 338 F.3d 348, 355 (4th Cir. 2003). Consistent with that view, a respondeat superior theory cannot support such liability as a matter of law. Austin v. Paramount Parks, Inc., 195 F.3d 715, 728 (4th Cir. 1999). Instead, to establish § 1983 liability for a private corporation, a plaintiff must show that "an official policy or custom of the corporation cause[d] the alleged deprivation of federal rights." Id.

At the pleadings stage, a plaintiff must allege facts to plausibly support "a direct causal link between a [corporate] policy or custom and the alleged constitutional deprivation." City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (internal citations omitted)). Moreover, a plaintiff must plausibly allege that the policy represents "the 'moving force' behind a deprivation of federal rights." Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).

-10-

In the instant case, Plaintiff's Complaint fails this standard. Plaintiff contends that Defendants required him to sign an illegible form to receive treatment and, "[b]y necessary inference, it appears that there was a policy of SHP and the staff of the [Stanly County] Detention Center to require inmates to sign such illegible and vague form[s] before any treatment was authorized." (Docket Entry 17 at 8.) Plaintiff's Complaint does not specify which Defendant asked him to sign the form, although it states that Nurse Mills, the Sheriff, and two corrections officers later denied him medication and treatment "upon the pretextual grounds that [] Plaintiff had not signed the illegible form as presented." (Docket Entry 1 at 7-8.)

As an initial matter, Plaintiff's Complaint provides no factual matter to specifically attribute the illegible form to SHP. (See id. at 3-8.) Moreover, the fact that someone allegedly attempted to get Plaintiff to sign an illegible form does not reasonably, much less necessarily, lead to an inference that SHP had a policy requiring the signing of illegible forms. If the mere fact that something occurred necessarily established that it occurred pursuant to a policy, the additional requirements imposed by Monell and its progeny would serve no purpose.

Further, even assuming SHP maintained such a policy, the Complaint does not allege that, upon arrival, anyone at the Stanly County Detention Center asked Plaintiff to sign such a form before

-11-

Nurse Mills discontinued his narcotic pain medication, the purported cause of Plaintiff's "weak and unstable" condition and subsequent injuries. (See Docket Entry 1 at 4.) The Complaint alleges that someone at the Stanly County Detention Center presented Plaintiff with illegible forms on two separate occasions. In the first instance,

> [u]pon readmission to the [Stanly County] Detention Center [on February 13, 2012, following Plaintiff's first fall], [P]laintiff signed a form on which he consented that he be treated by the medical staff and others at the [Stanly County] Detention Center. Plaintiff refused to sign a different form which contained illegible language, and which appeared to possibly release [] [D]efendants from liability for their previous actions with regard to their custody of [] [P]laintiff.

(Id. at 6-7.) However, neither Plaintiff's Complaint nor his Response to the instant Motion contain any allegations that connect this particular illegible form to Plaintiff's injuries. (See id. at 3-8; Docket Entry 17 at 7-9.)

In the second instance, after Plaintiff had allegedly fallen and received medical treatment a second time, "[D]efendants insisted that [] [P]laintiff sign an illegible form which they represented would grant permission to the [Stanly County] Detention Center staff to view his outside medical records . . . . [and] [u]pon [] [P]laintiff's refusal to sign the illegible form, [] [D]efendants refused to give [] [P]laintiff his physician-prescribed medication, and allowed his painful condition to continue . . . ." (Id. at 7.) Here, the Complaint suggests

-12-

some connection between Plaintiff's refusal to sign the form and Defendants' alleged continued resistance to providing him with narcotic pain medication. However, according to the Complaint, such refusal to sign did not represent a "moving force," Monell, 436 U.S. at 694, behind the denial to Plaintiff of narcotic pain medication, because Defendants had been denying Plaintiff such medication for three months before Plaintiff refused to sign either of the illegible forms. (See Docket Entry 1 at 3, 7.) Plaintiff allegedly arrived at the Stanly County Detention Center on November 10, 2011, and Defendants replaced his narcotic pain medication shortly thereafter, but Plaintiff did not refuse to sign any illegible form until at least February 13, 2012. (Id.)

Ultimately, the Complaint fails to allege factual matter establishing that a policy or custom of SHP deprived Plaintiff of his rights. See Iqbal, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that the defendant has acted unlawfully."). Therefore, the Court should dismiss Plaintiff's § 1983 claim against SHP.

## CONCLUSION

Plaintiff has failed to state any claim against Defendant SHP and has failed to state a claim for negligence against Defendant Mills.

-13-

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss for Failure to State a Claim (Docket Entry 12) should be granted in part in that Plaintiff's claims against Defendant SHP and Plaintiff's negligence claims against Defendant Mills should be dismissed.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

October 11, 2013