**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| BILLY RAY PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV488 |
| | ) | |
| RICK BURRIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter comes before the undersigned Magistrate Judge for a recommended ruling on Defendant Mills' Motion for Summary Judgment (Docket Entry 32) and Defendants R. Burris, L. Burris, Poplin, and Hudson's Motion for Summary Judgment (Docket Entry 35). For the reasons that follow, the Court should grant the instant Motions.

## I.  Factual Background

This case began when Plaintiff filed a Complaint alleging deprivations of his constitutional rights under 42 U.S.C. § 1983 and state-law negligence in connection with injuries sustained during Plaintiff's incarceration at the Stanly County Detention Center.  (Docket Entry 1 at 8-11.)  The Court subsequently dismissed all claims against Defendant Southern Health Partners and the negligence claims against Defendant Sarah Mills.  (Docket Entry 23.)  As a result, the surviving claims in Plaintiff's Complaint

concern four Defendants who served as law enforcement or corrections officers - Sheriff Rick Burris, Captain Lane Burris, Deputy Darrin Poplin, and Lieutenant Tommy Hudson - as well as Nurse Mills, employed by former Defendant Southern Health Partners to provide medical care to inmates at the Detention Center. (Docket Entry 1 at 2-3.) The Complaint alleges that all Defendants acted with deliberate indifference to Plaintiff's serious medical conditions (namely Reflexive Sympathetic Dystrophy, or "RSD"), by failing to provide him at all relevant times with appropriate pain medication or to afford him access to a handicapped shower, all in violation of the Eighth and Fourteenth Amendments of the United States Constitution. (Id. at 8-9.) It further alleges, under North Carolina law, that the negligence of the officer Defendants in failing to provide access to a handicapped shower or assist him in showering caused Plaintiff to suffer severe and disabling injuries when he fell in the shower. (Id. at 9-11; see also Docket Entry 23.)

To support her instant Motion for Summary Judgment, Defendant Mills filed her own affidavit (Docket Entry 34), as well as Plaintiff's complete medical file from his incarcerations (Docket Entry 34-1). Similarly, the officer Defendants filed excerpts from the deposition transcripts of various individuals involved in the incidents, including those of all five surviving Defendants. (Docket Entries 36-4, 36-5, 36-6, 36-7, 36-8, 36-9, 36-10.) In

response, Plaintiff submitted his own affidavit (Docket Entry 37), related supporting documents (Docket Entries 37-1, 37-2, 37-3, 37-4), and deposition excerpts from various detention officials (Docket Entries 39-1, 39-2, 39-3).

The uncontested record evidence indicates that Plaintiff reported to the Stanley County Detention Center on November 10, 2011, in connection with a civil contempt order. (Docket Entry 34 at 2; Docket Entry 37 at 2.) Prior to his incarceration, Plaintiff had been suffering from RSD in his right hand and arm, a chronic condition which causes significant pain, particularly during flare-ups. (Docket Entry 36 at 3; Docket Entry 37 at 2.) Plaintiff additionally suffered from hypertension, a thyroid condition, and occasional lower-back pain from a previous surgery. (Docket Entry 34 at 2-3; Docket Entry 37 at 2.) For these conditions, Plaintiff's primary care physician had prescribed him Diazepam (Valium), Oxycodone (for pain), Lisinopril (for hypertension), and Liothyronine (for thyroid condition). (Docket Entry 34 at 2, 4; Docket Entry 37 at 2.) Upon Plaintiff's admission, he reported those conditions and medications to the intake officer. (Docket Entry 34 at 2, Docket Entry 37 at 2.) That evening, Detention Center personnel apparently transferred Plaintiff from a cell located in the general population area to one located in a separate area, referred to as the Bubble. (Docket Entry 37 at 4.)

The following day, Defendant Mills examined Plaintiff, and he again reported his conditions and prescribed medications. (Docket Entry 34 at 2; Docket Entry 37 at 2-3.) Defendant Mills, a licensed practical nurse, did not have the authority to prescribe medications; however, she administered medications to prisoners pursuant to orders by Manuel Maldonado, a physician's assistant, or Dr. Laurie Bumgarner. (Docket Entry 34 at 2-3; Docket Entry 38 at 11-12.) Defendant Mills asked Plaintiff to sign two forms: a Consent for Treatment Form and an Authorization for Release of Medical Information to a Correctional Facility Form. (Docket Entry 34 at 3; Docket Entry 37 at 3.) Plaintiff signed the first form but declined to sign the second form, citing the illegibility of a portion of that form. (Docket Entry 34 at 3; Docket Entry 37 at 3.)

Defendant Mills informed Defendant that the Detention Center maintains a policy against narcotic medications and that, as a result, she could not administer Diazepam or Oxycodone to him, although she would continue his other medications. (Docket Entry 34 at 4; Docket Entry 37 at 3.) That same day (November 11, 2011), Mr. Maldonado placed Plaintiff on a narcotics withdrawal protocol, under which he prescribed Plaintiff Hydroxyzine (Vistaril), Oxazepam (Serax), and Tramadol (Ultram). (Docket Entry 34 at 4; Docket Entry 34-1 at 9-10, 15; Docket Entry 37 at 3.) As part of that withdrawal protocol, the nursing staff examined Plaintiff

-4-

daily from November 11 to 19, 2011. (Docket Entry 34 at 4; Docket Entry 34-1 at 9-10; Docket Entry 37 at 4.) Defendant Mills conducted daily examinations of Plaintiff from November 11 to 14, 2011; however, other nurses saw Plaintiff on the following days. (Docket Entry 34 at 4-5; Docket Entry 34-1 9-10; see also Docket Entry 37 at 4.) On November 17, 2011, Mr. Maldonado apparently reduced Plaintiff's dosages of Hydroxyzine, Oxazepam, and Tramadol. (Docket Entry 34 at 6; Docket Entry 34-1 at 15.)

On November 19, 2011, Plaintiff suffered a fall as he exited the shower in the Bubble area. (Docket Entry 34 at 7; Docket Entry 36-7 at 5-6; Docket Entry 37 at 5-6.) Plaintiff was transported first to nearby Stanley Regional Medical Center, then to Carolina Medical Center in Charlotte, North Carolina, where he underwent back surgery. (Docket Entry 34 at 7; Docket Entry 36 at 3; Docket Entry 37 at 6-7.)

Plaintiff did not return to the Detention Center until February 13, 2012. (Docket Entry 37 at 7; Docket Entry 34 at 7.) That same day, both an intake officer and Defendant Mills performed medical screenings during which Plaintiff reported taking Diazepam, Oxycodone/Acetaminophen (Endocet), Lisinopril, Liothyronine, (Cytomel), Tamsulosin (Flomax, for bladder issues), and Gabapentin (for nerve pain). (Docket Entry 34 at 7-8; Docket Entry 34-1 at 25-30; Docket Entry 37 at 7-8.) Defendant Mills again presented Plaintiff with a Consent for Treatment Form and an Authorization

for Release of Medical Information to a Correctional Facility Form. (Docket Entry 34 at 8; Docket Entry 37 at 8.) After contacting his attorney, Plaintiff agreed to sign the first form but elected not to sign the second, again citing the illegibility of a portion of that form. (Docket Entry 34 at 8; Docket Entry 37 at 8.)

Defendant Mills reports that she consulted with Mr. Maldonado, who prescribed only Liothyronine, Lisinopril, and Tamsulosin for Plaintiff and, further, declined to place Plaintiff on a withdrawal protocol. (Docket Entry 34 at 8-9.) Plaintiff confirms that he received no pain medication from Detention Center officials on either February 13 or February 14, 2012. (Docket Entry 37 at 8.) Plaintiff reported falling in his cell on February 14, 2012, and he was transported to Stanley Regional Medical Center. (Docket Entry 34 at 9; Docket Entry 37 at 8.)

Plaintiff returned to the Detention Center that same day, at which point Defendant Mills again requested that Plaintiff sign the records release form and Plaintiff again refused. (Docket Entry 34 at 9; Docket Entry 37 at 9.) On February 15, 2012, after Plaintiff reported back pain, Defendant Mills consulted with Mr. Maldonado who ordered Acetaminophen (Tylenol) for Plaintiff. (Docket Entry 34 at 9-10; Docket Entry 37 at 10.) The following day, Plaintiff reported suffering a third fall, in his cell, after which Defendant Mills examined Plaintiff and placed him safely in bed with an extra mattress. (Docket Entry 34 at 10; Docket Entry 34-1 at 36, 61.)

On February 17, 2012, Defendant Mills again raised the issue of Defendant's pain with Mr. Maldonado, who ordered an approximately two-week course of Acetaminophen, as well as Gabapentin. (Docket Entry 34 at 11; Docket Entry 37 at 10-11.)

Plaintiff repeatedly alleges that Defendant Mills and other Detention Center personnel informed him that he would not receive pain medication unless he signed the records release form. (See Docket Entry 37 at 8-10; Docket Entry 38 at 5-7.) That said, the Parties agree - and the medical records support - that from February 17 through at least March 2, 2012, Plaintiff received Acetaminophen for pain, as ordered by Mr. Maldonado. (Docket Entry 34 at 11-13; Docket Entry 34-1 at 55-57; Docket Entry 37 at 10.) The record similarly reflects that Plaintiff received Gabapentin for nerve pain from February 17 through the remainder of his incarceration. (Docket Entry 34 at 11-13; Docket Entry 34-1 at 55-57; Docket Entry 37 at 10.) Moreover, Defendant Mills and other nurses continued to respond to various sick call slips submitted by Plaintiff until his release on March 23, 2012. (Docket Entry 34 at 11-14; Docket Entry 37 at 10-12.)

## II. Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented

could lead a reasonable factfinder to return a verdict in favor of the non-moving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." <u>Matsushita Elec. Indus.</u>, 475 U.S. at 586-87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. <u>Anderson</u>, 477 U.S. at 252. "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." <u>Francis v. Booz, Allen & Hamilton, Inc.</u>, 452 F.3d 299, 308 (4th Cir. 2006).

### III. Discussion

In support of her instant Motion, Defendant Mills contends: (1) that Plantiff has failed to set forth evidence establishing that Defendant Mills acted with deliberate indifference to

Plaintiff's serious medical needs to support a § 1983 claim, (2) that Plaintiff has failed to present evidence of causation between the alleged wrongful conduct of Defendant Mills and an actual injury suffered by Plaintiff to support a § 1983 claim, and (3) that qualified immunity shields Defendant Mills from liability under § 1983. (Docket Entry 33 at 10-15.) Similarly, the officer Defendants' instant Motion argues: (1) that Plaintiff has not forecast sufficient evidence of deliberate indifference to support a § 1983 claim, (2) that Plaintiff has failed to show evidence of a policy or custom to support municipal liability, (3) that qualified immunity shields the officer Defendants from liability under § 1983, and (4) that both sovereign and public official immunities bar Plaintiff's negligence claim. (Docket Entry 36 at 5-20.)

A. Legal Background: 42 U.S.C. § 1983

i. The "Deliberate Indifference" Standard

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 199-200 (1989). In other words, "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human

needs — e.g., food, clothing, shelter, <u>medical care</u>, and <u>reasonable safety</u> — it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."  <u>Id.</u> at 200 (emphasis added).

However, not every injury suffered by a prisoner "translates into constitutional liability for prison officials responsible for the victim's safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994). Plaintiff thus cannot maintain a constitutional claim against Defendants merely based on allegations that they negligently failed to protect him from an unsafe condition because "deliberate indifference describes a state of mind more blameworthy than negligence," <u>Farmer</u>, 511 U.S. at 835.  Instead, this standard applies:

> <u>First</u>, a constitutional violation occurs only where the deprivation alleged is "objectively, sufficiently serious."  For a claim based on a failure to prevent harm, a [plaintiff] must show that he [was] detained or incarcerated "under conditions posing a <u>substantial risk of serious harm</u>."  . . .  <u>Second</u>, an official must have "a sufficiently culpable state of mind."   In prison[/jail]-conditions cases, the requisite state of mind is "<u>deliberate indifference</u>."

<u>Brown v. Harris</u>, 240 F.3d 383, 388-89 (4th Cir. 2001) (quoting <u>Farmer</u>, 511 U.S. at 834) (internal citations and secondary internal quotation marks omitted) (emphasis added).

Similarly, as to claims based on denial of medical care, Plaintiff "must demonstrate that the [officials] acted with 'deliberate indifference' (subjective) to the inmate's 'serious

medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th

Cir. 2008). "Beginning with the objective component, a

serious . . . medical need is one that has been diagnosed by a

physician as mandating treatment or one that is so obvious that

even a lay person would easily recognize the necessity for a

doctor's attention." Id. As to the second prong, "[d]eliberate

indifference is a very high standard [and] a showing of mere

negligence will not meet it." Grayson v. Peed, 195 F.3d 692, 695

(4th Cir. 1999). Instead, the "deliberate indifference" prong

requires Plaintiff to make "two showings":

> First, the evidence must show that the official in
> question subjectively recognized a substantial risk of
> harm. It is not enough that the [official] *should have*
> recognized it; [he] actually must have perceived the
> risk. Second, the evidence must show that the official
> in question subjectively recognized that his actions were
> inappropriate in light of that risk. As with the
> subjective awareness element, it is not enough that the
> official *should have* recognized that his actions were
> inappropriate; the official actually *must have* recognized
> that his actions were insufficient.

Parrish ex rel. Lee v. Cleveland, 372 F.3d 294, 303 (4th Cir. 2004)

(internal citations and quotation marks omitted) (emphasis in

original). "The subjective component therefore sets a particularly

high bar to recovery." Iko, 535 F.3d at 241. "[A]s a consequence,

many acts or omissions that would constitute medical malpractice

will not rise to the level of deliberate indifference." Jackson v.

Lightsey, 775 F.3d 170, 178 (4th Cir. 2014). Moreover,

"disagreement[s] between an inmate and a physician over the

inmate's proper medical care . . . fall short of showing deliberate indifference.  Id. (internal quotation marks and brackets omitted).

*ii.  Qualified Immunity from § 1983 Claims*

"Qualified immunity from § 1983 claims 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Doe ex rel. Johnson v. South Carolina Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)) (some internal quotation marks omitted).  Put simply, qualified immunity "ensures that officials are not unfairly strung up for money damages as a result of bad guesses in gray areas [and] [i]t encourages capable citizens to join the ranks of public servants by removing the threat of constant litigation." Braun v. Maynard, 652 F.3d 557, 560 (4th Cir. 2011) (internal citation and quotation marks omitted).  Accordingly, "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" Pearson, 555 U.S. at 236 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  "Determining whether qualified immunity applies involves a two-prong inquiry: 'whether the facts make out a violation of a constitutional right' and 'whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct.'"  West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014) (quoting Pearson, 555 U.S. at 232 (internal ellipsis omitted)).

Defendants' instant Motions, however, only address the first prong of the qualified immunity analysis: that is, the qualified immunity arguments refer to the lack of evidence supporting a constitutional violation; said Motions do not meaningfully analyze whether the right in question qualifies as clearly established (without regard to whether a violation actually occurred). (See Docket Entry 33 at 15; Docket Entry 36 at 18-20.) For that reason, the assessment of whether Defendants enjoy qualified immunity merges with the analysis of the viability of Plaintiff's § 1983 claim.

### iii. Policy or Custom Requirement to Support Local Government Liability under § 1983

"[N]ot every deprivation of a constitutional right will lead to municipal liability. Only in cases where the municipality causes the deprivation through an official policy or custom will liability attach." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted). Furthermore, for purposes of § 1983, a suit against a sheriff in his official capacity constitutes a suit against a local governmental entity, i.e., a sheriff's office. See Gantt v. Whitaker, 203 F. Supp. 2d 503, 508 (M.D.N.C. 2002).

Here, because Plaintiff's Complaint contains no allegations concerning Defendant R. Burris's personal involvement in any deprivation of Plaintiff's constitutional rights (see Docket Entry 1 at 3-8), Plaintiff must set forth evidence that his alleged

-13-

constitutional deprivations occurred pursuant to an official policy or custom to recover against Defendant R. Burris in his official capacity as the Stanly County Sheriff, see Carter v. Morris, 164 F.3d 216, 218 (4th Cir. 1999). Such liability may arise:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

Lytle, 326 F.3d at 471. "Thus, a plaintiff cannot rely upon scattershot accusations of unrelated constitutional violations . . . . Instead, a 'plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional . . . right will follow the decision.'" Carter, 164 F.3d at 218 (quoting Board of Cnty. Comm'rs v. Brown, 520 U.S. 397, 405 (1997)).

## B.   Defendant Mills

In moving for summary judgment, Defendant Mills principally contends that Plaintiff has failed to forecast evidence supporting a finding that she acted with a sufficiently culpable state of mind, that is, with deliberate indifference to Plaintiff's medical needs. (Docket Entry 33 at 10-11.) Defendant Mills does not dispute that Plaintiff's RSD and post-surgery back pain constituted objectively serious medical conditions. (Id. at 10-14.) Instead, the instant Motion asserts that the undisputed evidence forecloses

a finding of deliberate indifference because it "establishes that Plaintiff received extensive medical treatment and was appropriately treated for his medical conditions and complaints." (Id. at 11.)

In opposing summary judgment, Plaintiff contends that "[Defendant] Mills improperly conditioned treatment of [Plaintiff] on whether he would sign the Records Release . . . [because] [a] jury could find that conditioning his pain medication in such a manner is deliberate indifference." (Docket Entry 38 at 10-11.)[1] As an initial matter, the fact that, as a nurse, Defendant Mills cannot prescribe medication, undercuts Plaintiff's assertion that her alleged inaction in regards to pain medicine amounted to deliberate indifference. See, e.g., Manley v. Southern Health Partners, Inc., No. 5:14-cv-111-FDW, 2014 WL 5509183, at *2 (W.D.N.C. Oct. 31, 2014) (unpublished) ("[T]he Court finds that Plaintiff has failed to state a claim of deliberate indifference against the defendant nurses because by his own admission, the

---

[1] Plaintiff appears to concede a lack of deliberate indifference on the part of Nurse Mills as to his first period of incarceration by only asserting violations of his rights stemming from the period of incarceration which began on February 14, 2012. (See Docket Entry 38 at 8-14.) Moreover, the undisputed evidence - particularly Defendant Mills' absence from the Detention Center on the day Plaintiff fell in the shower (see Docket Entry 34 at 6; Docket Entry 37 at 4) - does not support a finding of causation between any act or omission of Defendant Mills and injuries sustained by Plaintiff during that first period of incarceration.

nurses believed that they could not provide him with the medication until they were authorized to do so by an unnamed doctor.")

In recognition of that limitation, Plaintiff argues that, after Plaintiff refused to sign the records release, Defendant Mills failed to communicate critical information to Mr. Maldonado, who in turn failed to properly follow the hospital discharge instructions providing for appropriate pain medication. (See Docket Entry 38 at 10-12.) In that regard, Plaintiff contends that "[n]one of the evidence shows that [Defendant] Mills communicated to her supervising nurse or physician assistant any information regarding [Plaintiff's] severe pain, or that she suggested that any pain meddication [sic] be allowed." (Id. at 12.)

However, Plaintiff's medical records show that Defendant Mills consulted with Mr. Maldonado concerning pain medication for Plaintiff on both February 15 and 17, 2012, and that Mr. Maldonado ordered Acetaminophen and Gabapentin as a result of those consultations. (See Docket Entry 34-1 at 15, 59.) Consistent with the foregoing, Plaintiff's affidavit acknowledges his receipt of those same pain medications on the same dates. (Docket Entry 37 at 10.) Thus, the undisputed evidence suggests that Defendant Mills communicated relevant medical information to Mr. Maldonado in an effort to alleviate Plaintiff's pain. Simply put, without regard to any insistence by Defendant Mills that Plaintiff sign a records release, to the purported illegibility of such form, or to access

Defendant Mills possessed to Plaintiff's records notwithstanding his refusal to sign, the undisputed evidence shows that Defendant Mills continued to provide medical treatment to Plaintiff despite his ongoing refusal to sign the release.

Furthermore, even assuming that Defendant Mills failed to communicate critical information to Mr. Maldonado, numerous federal courts have determined that, absent evidence of malicious purpose, the failure of prison medical personnel to provide pain medication of sufficient strength does not constitute deliberate indifference. See, e.g., Weigher v. Prison Health Servs., 403 F. App'x 668, 670 (3d Cir. 2010) ("[Absent] evidence that [doctor] purposefully prescribed ineffective [pain] medication . . . the claim more closely resembles one of negligence as opposed to deliberate indifference."); Jacobs v. McVea, Civ. A. No. 14-552, 2014 WL 2894286, at *7 (E.D. La. June 25, 2014) (unpublished) ("While it is evident that plaintiff was unhappy with the over-the-counter pain medication, a prisoner has no right to be prescribed a particular medication for pain, and the fact that he disagrees with the prison medical staff concerning which pain medication is appropriate is not actionable under § 1983."); Feder v. Sposato, No. 11-CV-193, 2014 WL 1801137, at *9 (E.D.N.Y. May 7, 2014) (unpublished) ("[T]he failure to provide stronger pain medication does not constitute deliberate indifference."); Starling v. United States, 664 F. Supp. 2d 558, 570-71 (D.S.C. 2009) (concluding that allegations of

"ignoring specialist's recommendations, dispensing inferior pain medication, and refusing prescribed treatment" on part of doctor did not establish deliberate indifference); cf., Gil v. Reed, 381 F.3d 649, 662-64 (7th Cir. 2004) (concluding that prison doctor's decision to substitute Codeine/Acetaminophen for specialist's recommendation of Hydrocodone/Acetaminophen, despite specialist's warning of particular health risks to inmate presented by Codeine, could support finding of deliberate indifference).

Although Plaintiff alleges that Defendant Mills acted in bad faith by conditioning his receipt of medication on signing the records release (see Docket Entry 38 at 10-1), Plaintiff offers no evidence to support the view that, had Plaintiff signed the form, Mr. Maldonado would have ordered different medications (see id. at 8-12). The prison's policy against narcotic pain medication, as well as Defendant Mills' inability to prescribe medications, further undermine the argument that the decision to prescribe a less effective pain medication evinces malice on the part of Defendant Mills. Given that Plaintiff acknowledges his daily receipt of some form of pain medication (whether Acetaminophen, Gabapentin, or both) from February 15, 2012, through the remainder of his incarceration (with the exception of February 16, 2012), his claim against Defendant Mills amounts to a disagreement over the proper course of medical care that does not rise to the level of deliberate indifference.

Furthermore, as to Defendant Mills' argument concerning the absence of causation or actual injury, because Plaintiff has failed to set forth evidence to support a finding of deliberate indifference on the part of Defendant Mills, Plaintiff has also failed to establish causation or injury. Finally, as discussed above in Section III.A.ii, the absence of evidence supporting a finding that a constitutional violation occurred satisfies the first prong of the qualified immunity analysis and, thus, Defendant Mills also enjoys qualified immunity. In sum, the Court should grant summary judgment for Defendant Mills.

C.   Officer Defendants

    i.  *Section 1983 Claim*

Defendants R. Burris, L. Burris, Poplin, and Hudson move for summary judgment as to Plaintiff's § 1983 claim on the basis that the forecast of evidence does not support a finding of deliberate indifference. (Docket Entry 36 at 9-13.) The officer Defendants further contend that, because no constitutional violation occurred, they enjoy qualified immunity. (Id. at 18-20.) Finally, Defendant R. Burris, the Stanly County Sheriff, asserts the absence of an identified policy or custom, necessary to support his liability under § 1983. (Id. at 14-18.)

Plaintiff opposes summary judgment because "there is evidence from which a reasonable jury could conclude that the Defendants acted with deliberate indifference by failing to provide

appropriate shower facilities or an escort to the shower facilities and by withholding medical care." (Docket Entry 39 at 1.) However, Plaintiff's argument almost exclusively addresses Defendant R. Burris's contention that Plaintiff has not named a policy or custom to support liability against him. (See id. at 9-13.)[2] In that regard, Plaintiff has identified "[t]he custom/practice of inmates with health needs using non-handicapped shower facilities and Jail staff not escorting or adequately observing shower areas" (id. at 10) and "[t]he custom/practice of withholding health care when prisoners refuse to sign non-HIPAA compliant forms" (id. at 11).

Plaintiff, however, has not forecast evidence to reasonably support a finding that any officer Defendant acted with deliberate indifference toward Plaintiff's serious medical needs. In that regard, although Plaintiff's brief, in its discussion of policy or custom, appears to assert that the officer Defendants had knowledge of Plaintiff's medical needs and nonetheless failed to provide him with a safe shower facility, or in the alternative, escort him to the shower (id. at 10-11), Plaintiff's brief fails to identify any evidence in the record sufficient to establish that Defendants L. Burris, Poplin, or Hudson possessed the requisite state of mind to

---

[2] It also briefly addresses the issue of qualified immunity, but does not set forth evidence to support the position that the officer Defendants acted with deliberate indifference. (See Docket Entry 39 at 9-13.)

support a finding of deliberate indifference (see id. at 4, 10-11). In fact, beyond general assertions that Defendants should have known of his medical needs based on his daily trips to the medical office (see id. at 3-4), Plaintiff has not pointed to any evidence that Defendants L. Burris, Poplin, or Hudson actually knew of Plaintiff's medical conditions or of his wish to use a handicapped shower prior to his fall on November 19, 2011 (see id. at 1-14). As a matter of law, the officer Defendants cannot have recognized the insufficiency of their actions without perceiving a risk of harm to Plaintiff, as required to support a finding of deliberate indifference. See Parrish, 372 F.3d at 303.

Plaintiff's brief further appears to assert that the officer Defendants acted with deliberate indifference by withholding medical care from Plaintiff. (Docket Entry 39 at 11-12.) "'If a prisoner is under the care of medical experts, a nonmedical prison official will generally be justified in believing that the prisoner is in capable hands.'" Iko, 535 F.3d at 242 (quoting Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004)). "To bring [such] a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct." Krug v. Loranth, No. 1:13CV1409-DCN, 2014 WL 4955365, at *7 (D.S.C. Sept. 29, 2014)

(unpublished) (citing <u>Miltier v. Beorn</u>, 896 F.2d 848, 854 (4th Cir. 1990), <u>overruled on other grounds</u>, <u>Farmer</u>, 511 U.S. 825).  Simply put, Plaintiff has not set forth evidence of any circumstances of that nature to support the position that the officer Defendants acted with deliberate indifference with regard to Plaintiff's receipt of medication.[3]

Moreover, Plaintiff's theory of recovery against Defendant R. Burris fails because, without regard to Plaintiff's identification of a policy or custom, Plaintiff cannot recover under § 1983 without setting forth evidence to support a constitutional violation resulting from that policy or custom.  <u>See, e.g.</u>, <u>Jackson v. Pena</u>, 28 F. Supp. 3d, 423 432-34 (D. Md. 2014) (dismissing § 1983 claim against police department where plaintiff "failed to satisfy the prerequisite to a sufficient allegation of [municipal] liability - that his constitutional rights were violated by the [police department's] employees.").  However, even assuming that Plaintiff had established an underlying constitutional violation, the practices described by Plaintiff do not qualify as a policy or custom for purposes of § 1983.

_____

[3] Plaintiff suggests that the officer Defendants acted with deliberate indifference by conditioning medical treatment for Plaintiff on his signing of the records release.  (<u>See</u> Docket Entry 39 at 11-12.)  That contention lacks merit.  As discussed above with respect to Defendant Mills in Section III.B, no record evidence supports the view that any prison officials actually denied Plaintiff necessary treatment as a result of Plaintiff's refusal to sign the records release.

First, Plaintiff asserts that the Detention Center maintained a "custom and practice of providing non-handicapped shower facilities to inmates who had heightened medical issues." (Docket Entry 39 at 11.) Plaintiff thus contends that the consistent and widespread nature of such practice qualifies it as a custom sufficient to support municipal liability. (Id. at 11.) In that regard, Plaintiff states that the Detention Center sometimes housed inmates with health issues in the Bubble, that the Bubble had an non-handicapped shower only, that guards never allowed Plaintiff to use a different shower, and that guards could not recall ever escorting an inmate to the shower. (See id. at 10-11.) Of course, Plaintiff's statements do not establish that the Detention Center has ever denied another inmate access to a handicapped shower and Plaintiff's own citations to the record support the contrary position that officials had not previously confronted the issue (see Docket Entry 39-1 at 3-5; Docket Entry 39-3 at 2-4). Given that Plaintiff has not identified any instance outside his own experience regarding any routine denial of handicapped shower facilities to inmates in need of such facilities, his statements fall short of establishing a persistent and widespread practice. See Lytle, 326 F.3d at 473 ("It is well settled that isolated incidents of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." (internal quotation marks omitted)).

Second, Plaintiff contends that the Detention Center follows a "custom/practice of withholding health care when prisoners refuse to sign non-HIPAA compliant forms." (Docket Entry 39 at 11.) That contention fails, however, because Plaintiff provides no evidence that such conduct occurred more than once. See Lytle, 326 F.3d at 473. Further, Plaintiff undermines his argument by admitting that, "[w]hen [Plaintiff] was first incarcerated at the Jail, his access to medical care was not contingent on whether or not he had signed a[] [release]." (Docket Entry 39 at 11.) That Plaintiff himself did not experience a consistent application of the purported custom confirms the absence of proof of a persistent and widespread practice equivalent to a policy.

As a final matter, as with Defendant Mills, because Plaintiff has failed to set forth evidence that a constitutional violation actually occurred, the officer Defendants also enjoy qualified immunity from suit under § 1983. For these reasons, the Court should grant summary judgment for the officer Defendants as to Plaintiff's § 1983 claim(s).

*ii. Negligence Claim*

To make out a negligence claim under North Carolina law, a plaintiff must show: "(1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." Stein v. Asheville City Bd. of Educ., 360 N.C. 321, 328, 626 S.E. 2d 263, 267 (2006). However, under North Carolina law, "[i]t is a fundamental rule that

sovereign immunity renders this state, including counties and municipal corporations therein, immune from suit absent express consent to be sued or waiver of the right of sovereign immunity." Data Gen. Corp. v. County of Durham, 143 N.C. App. 97, 100, 545 S.E.2d 243, 246 (2001). Sovereign immunity "also bars actions against public officials sued in their official capacity." Beck v. City of Durham, 154 N.C. App. 221, 229, 573 S.E.2d 183, 190 (2002). Similarly, "it is settled [under North Carolina law] that a public official, engaged in the performance of governmental duties involving the exercise of judgment and discretion, may not be held personally liable for mere negligence in respect thereto." Isenhour v. Hutto, 350 N.C. 601, 609, 517 S.E.2d 121, 127 (1999) (internal quotation marks omitted).

Although "a municipality may waive its [sovereign] immunity for civil liability in tort for negligent or intentional damage by purchasing liability insurance, [it does so] only to the extent of the insurance coverage." Estate of Earley ex rel. Earley v. Haywood Cnty. Dep't of Soc. Servs., 204 N.C. App. 338, 341, 694 S.E.2d 405, 408 (2010). Therefore, where a municipality maintains insurance coverage that excludes liability for claims barred by sovereign immunity, that municipality has not waived its sovereign immunity. Id. at 342-43, 408-09.

The officer Defendants move for summary judgment as to Plaintiff's state-law negligence claim by asserting that sovereign

immunity bars any such official-capacity claim and that public officials immunity bars any such individual-capacity claim. (Docket Entry 36 at 5-9.) In opposing summary judgment, Plaintiff does not contest that the officer Defendants enjoy sovereign and public officials immunities from suit for state-law negligence. (See Docket Entry 39 at 1-14.) In fact, Plaintiff's brief makes no mention of his negligence claim. (See id.)

Moreover, the record before the Court supports the position that those protections apply and render the officer Defendants immune from suit for state-law negligence in either their official or individual capacities. In particular, the officer Defendants have provided a copy of Stanly County's liability insurance policy which includes a Sovereign Immunity Non-Waiver Endorsement. (See Docket Entry 36-2 at 12.) Under these circumstances, the Court should grant summary judgment for the officer Defendants as to Plaintiff's negligence claim.

## IV. Conclusion

All Defendants have established grounds for relief pursuant to Federal Rule of Civil Procedure 56(a).

**IT IS THEREFORE RECOMMENDED** that Defendant Mills' Motion for Summary Judgment (Docket Entry 32) be granted.

**IT IS FURTHER RECOMMENDED** that Defendants R. Burris, L. Burris, Poplin, and Hudson's Motion for Summary Judgment (Docket Entry 35) be granted.

                              /s/ L. Patrick Auld
                            **L. Patrick Auld**
                    **United States Magistrate Judge**
March 31, 2015